UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| VICTOR PAGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-288 |
| | ) | |
| A.D. TRANSPORT EXPRESS, INC., and THORCAM ALLAMY, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the court on the Motion for Partial Summary Judgment [DE 38] filed by Defendant A.D. Transport Express, Inc. ("A.D. Transport."), on April 22, 2025. The plaintiff, Victor Page, filed his Response [DE 42] on May 19, 2025. A.D. Transport filed its Reply [DE 54] on June 24, 2025. This matter is fully briefed and ripe for ruling. For the following reasons, Partial Summary Judgment is **GRANTED**.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

*Undisputed Material Facts*

1. Thorcam Allamy was hired by A.D. Transport in 2021 as an over-the-road driver to deliver freight as a commercial truck driver.

2. Allamy's responsibilities included loading the truck, driving the truck, performing safety inspections, and logging hours

3. Allamy was paid based on the number of miles he drove, as is custom in the trucking industry.

4. A.D. Transport drivers received $80 per diem as non-taxed income, and this per diem payment was structured as a part of the driver's wages.

5. Drivers, in accordance with federal regulations, are required to take a statutory 30-minute break if driving more than eight hours.

6. Allamy started his July 29, 2021 shift in Canton, Michigan in a gray Freightliner truck equipped with GPS, a camera, and a tablet.

7. Allamy frequently drove from Canton, Michigan to Rockford, Illinois or DeKalb, Illinois.

8. When Allamy drove from Canton, MI to either Illinois destination, he stopped at the Chesterton/Burns Harbor Pilot Truck Stop ("Chesterton Truck Stop") to take a break.

9. While at the Chesterton Truck Stop, Allamy parked at the fuel pumps, even if he was not fueling his truck.

10. On July 29, 2021, Allamy parked his truck at the fuel pumps at 8:54 p.m. EST. Allamy did not purchase fuel, but he did leave his truck to purchase food from McDonald's.

11. Allamy ate his McDonald's in his truck and was parked for approximately 20 minutes prior to interacting with Victor Page.

12. On July 29, 2021, Page was a truck driver for Hercules Forwarding.

13. Page was on a route driving from Hickory Hills, Illinois to Flint, Michigan, and Page stopped at the Chesterton Truck Stop to fuel his truck.

14. Page had no problem accessing a fuel pump and started fueling next to Allamy's truck, which Page noticed was not fueling up.

15. Allamy and Page had a verbal altercation that turned into a physical altercation.

16. Allamy threw a punch at Page, but Page's punch was the first punch to make contact, striking Allamy on the side of the face.

17. Allamy then punched Page many times in the nose, the right side of the head, and in the face.

18. Page then tripped and fell, hitting his head on the truck trailer and landing flat on his back on the ground.

19. Allamy continued to kick Page while he was laying on the ground after falling.

20. Allamy went to his truck, then he returned to kick Page and steal his sneakers.

21. Allamy went back to his truck, boarded, and proceeded to drive away.

22. Allamy started driving away, and the passenger-side tires drove over Page's foot, breaking his right big toe.

23. The altercation between Allamy and Page lasted approximately five minutes.

24. A.D. Transport first learned about the incident when it was contacted by the Burns Harbor Police Department.

25. A.D. Transport did not conduct a drug or alcohol test on Allamy following the incident.

26. A.D. Transport did not pull Allamy as a driver, but it did reassign Allamy to local and Philadelphia routes.

27. A.D. Transport knew that drivers charged with felonies and leaving the scene of an accident are disqualified from driving.

28. A.D. Transport was notified of Allamy's felony charges on August 6, 2021.

29. Page suffered the following injuries from the altercation with Allamy: fractured C5-C6 vertebrae requiring surgery, a broken nose, potential concussion, right side paralysis, cracked tooth cap, a broken toe, and lacerations to the right arm, face, and knees.

*Discussion*

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper only if the movant has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Gnutek v. Illinois Gaming Bd.*, 80 F.4th 820, 824 (7th Cir. 2023); *Garofalo v. Vill. of Hazel Crest*, 754 F.3d 428, 430 (7th Cir. 2014); *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012). A fact is material if it is outcome determinative under applicable law. The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021).

When the movant has met its burden, the opposing party cannot rely solely on the allegations in the pleadings but must "point to evidence that can be put in admissible form at trial, and that, if believed by the fact-finder, could support judgment in [her] favor." *Marr v. Bank of Am., N.A.*, 662 F.3d 963, 966 (7th Cir. 2011); *see also Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.")). The non-moving party cannot rely on conclusory allegations. *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021). Failure to prove an essential element of the alleged activity will render other facts immaterial. *Celotex*, 477 U.S. at 323; *Filippo v. Lee Publications, Inc.*, 485 F. Supp. 2d 969, 972 (N.D. Ind. 2007) (the non-moving party "must do more than raise some metaphysical doubt as to the material facts; she must come forward with specific facts showing a genuine issue for trial").

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). The trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial. *Anderson*, 477 U.S. at 248; *Cung Hnin v. Toa, LLC,* 751 F.3d 499, 504 (7th Cir. 2014); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

A.D. Transport requests partial summary judgment in its favor as to Page's claim of respondeat superior liability for Allamy's actions during the altercation at the truck stop except for running over Page's big toe with his truck. Under the doctrine of respondeat superior, an employer is liable for an employee's actions that are committed within the employee's scope of employment. *Cardenas v. Hook-SupeRx, L.L.C.*, 249 N.E.3d 1100, 1107 (Ind.Ct.App. 2005). Whether an act is within an employee's scope of employment is generally a question of fact. *New Augusta N. Pub. Acad. v. K.G.*, 219 N.E.3d 175, 181 (Ind.Ct.App. 2023) ("when, however, 'the relevant facts are undisputed and would not allow a jury to find that the tortious acts were within the scope of employment, we may conclude as a matter of law that they were not.'" (quoting *Cox v. Evansville Police Dep't*, 107 N.E.3d 453, 460 (Ind. 2018))). The scope of employment rule arises when an employer has control over or surrounding the employee's actions at issue. *New Augusta N. Pub. Acad.*, 219 N.E.3d at 181. The scope of employment can include acts that were not authorized but are duties that further the employer's business or benefit the employer. *Id.* In other words, even a wrongful act can be considered within the scope of employment if it is motivated by an intention to further the employer's business.

5

The court is unconvinced by Page's argument that Allamy punched and kicked Page in an effort to further A.D. Transport's business. During the beating, Allamy was not acting in the scope of his employment. Committing an egregious battery against another truck driver who, though ill-advised, was complaining about where Allamy had parked, does not—and cannot—be construed to benefit A.D. Transport's business. In fact, an employee committing a battery in this manner actually damages an employer and its reputation, rather than furthering any business goal. The scope of employment rules extends beyond authorized acts to hold an employer liable for harms done in furtherance of its business. *New Augusta N. Pub. Acad.*, 219 N.E.3d at 180. Allamy's brutal beating of another truck driver was not an act that was committed to benefit A.D. Transport.

In his response, Page has relied on two cases. The Indiana Supreme Court in *Barnett v. Clark*, 889 N.E.2d 281 (Ind. 2008) held that a deputy township trustee who sexually assaulted a citizen applying for public assistance did not do so within the scope of his employment. The court found that the trustee had committed a criminal act and that sexual assault was not an authorized responsibility of his job. *Barnett*, 219 N.E.3d at 183. The court found that the trustee's actions did not further the employer's business, were not motivated by the employer's interests, and were not within or incidental to the trustee's authorized duties. *Id.*

Here, Allamy's actions are similar to that of the trustee in *Barnett*. Pummeling another truck driver in a fit of rage is more akin to the trustee abusing his authority and sexually assaulting a citizen. Just because Allamy's job may have put him in the position to assault another truck driver, just like the trustee was in a position to abuse his power with a citizen applying for assistance, does not mean that Allamy's actions were incidental to or in furtherance of his employment.

The second case cited by Page also is not controlling. In *Stropes by Taylor v. Heritage*

6

*House Childrens Center of Shelbyville, Inc.*, 547 N.E.2d 244 (Ind. 1989), the court found employer liability after a disabled child was raped by a facility employee nurse. There, the nurse was charged with feeding, bathing, and changing the clothing and beddings of residents, including the child who was raped. *Id.* at 246. The nurse had the authority to care for the child while the child was naked or changing, but he surpassed his authority by raping the child. Allamy was not at all in a similar position to the nurse in *Stropes* because Allamy had no business or responsibility to Page.

To the extent that Page argues that Allamy's parking at the fuel pump benefitted A.D. Transport by saving a few minutes during a truck stop, the court disagrees. Page contends that Allamy parked at the fuel pump to minimize the amount of time he would have to stay at the truck stop by shortening the walking distance to McDonald's. However, this argument undermines Page's other argument: that Allamy was required to stop for thirty minutes and was being compensated while at the truck stop. Viewing the facts in a light most favorable to Page, parking at the fuel pump may have saved Allamy fifteen minutes per stop. However, Allamy parked at the truck stop for thirty minutes so any time saved would have benefitted him and not his employer.

The parties dispute whether Allamy was being monitored in "real time" by a GPS and ELD system. That factual dispute does not affect the court's analysis. Even if A.D. Transport had live feed monitoring, that would not have made a difference in Allamy's outburst. If A.D. Transport had been watching a video and had seen Allamy get out of the cab, perhaps A.D. Transport could have called Allamy or used an intercom to try and deter him from continuing to pummel Page. However, those speculations are irrelevant to whether Allamy's beating of Page was within the scope of his employment with A.D. Transport.

Similarly, just because A.D. Transport had control over Allamy before and after he assaulted Page, it does not mean that the beating was incidental to Allamy's employment. A.D.

Transport concedes that it can be vicariously liable for any injury Page sustained from being run over by Allamy's truck. Again, Allamy's decision to assault Page was an unauthorized deviation from his employment responsibilities, so it was not incidental or foreseeable given his employment duties.

The parties also dispute whether Allamy was required to take a meal break during this particular delivery trip. Given the nature of Allamy's actions, whether the break was required is irrelevant. Even if the break was required given the duration of the delivery trip and the hours Allamy had spent driving, assaulting another truck driver is so unrelated to any of Allamy's employment responsibilities and harmful to A.D. Transport's business that the beating would not fall within the scope of Allamy's employment.

In short, Page was not attempting to further his employer's business when he confronted Allamy at the fuel pumps, and neither was Allamy when he responded in kind. It was a personal spat, and A.D. Transport is not responsible for Allamy's conduct under the theory of respondeat superior.

In the Complaint, Page alleges A.D. Transport committed negligent hiring and supervision. [*See* DE 3]. Page's other claims against A.D. Transport will proceed to trial.

### *Conclusion*

Accordingly, A.D. Transport's Motion for Partial Summary Judgment [DE 38] is **GRANTED**.

ENTERED this 13th day of November, 2025.

/s/ Andrew P. Rodovich
United States Magistrate Judge